HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY LEE ANDISON, *et ux.*,

    Plaintiffs,

v.

CLARK COUNTY, *et al.*,

    Defendants.

CASE NO. C14-5492 RBL

ORDER ON MOTION FOR
JUDGMENT ON THE PLEADINGS

[Dkt. # 20]

THIS MATTER is before the Court on Defendant City of Vancouver's, Defendant Clark County's, Police Chief Cook's, and Sheriff Lucas's Motion for Judgment on the Pleadings.

In June 2011, Plaintiff Andison's adult daughter called 911 to report that Andison was intoxicated and distraught, and having an acute mental crisis with suicidal ideation. Two dozen City and County officers came to the home, including a SWAT team. The responding officers—which did not include Chief Cook or Sheriff Lucas—entered the home over the daughter's objections, and located Andison in a room above the garage. She was holding a non-firing "starter pistol" and, according to Plaintiffs, informed the officers that it was not a real gun and that "they would have to shoot her." According to the Plaintiffs, Andison's family repeatedly told the officers to leave. They did not; they stayed for two hours. They shot multiple 40 mm

1  "less than lethal" rounds at Andison's room.  When she walked out, a SWAT team member,

2  Defendant Junker, shot her in the head with an assault rifle.  She went down on the stairs in a

3  pool of blood, and the officers shot additional 40mm rounds at her, apparently and allegedly

4  because she did not respond to their further commands. The officers prevented Andison's

5  husband (an M.D.) and the daughter who called 911 (an R.N.) from attending to her. Andison

6  lived, but suffered severe, permanent injuries.

7         Andison and her family sued the City, the County, Junker, and other officers, as well as

8  Chief Cook and Sheriff Lucas, for violations of their Fourth Amendment (unlawful search and

9  seizure, and excessive force) constitutional rights.  They also assert associated state law claims

10 for False Imprisonment, Assault, Battery, and Negligence.  They assert *Monell* claims against the

11 City and County, and seek to hold Chief Cook and Sheriff Lucas officially and individually

12 liable as the "final policy makers" for the City and County, respectively.  In support of these

13 claims, the Andisons claim that the responding officers' actions and violations were caused by

14 inadequate training in at least seven areas related to handling situations like the Andisons'.

15        The moving Defendants argue that the Complaint against them should be dismissed

16 because the claims are conclusory, formulaic recitations not entitled to a presumption of truth,

17 and are therefore not plausible under *Twombly* and *Iqbal*.

18        Specifically, Cook and Lucas argue that neither the Andisons' complaint nor their

19 Response alleges that either of them did *anything* in relation to the incident—and that neither of

20 them was even present.  They point out that there is no *respondeat superior* liability under

21 §1983, and that simply being the Sheriff or Chief is insufficient to hold an individual liable under

22 §1983, as a matter of law.  They also claim they are entitled to qualified immunity in any event.

23

24

1    The City and County seek dismissal of the *Monell* claims against them, arguing that the Andisons have only recited the bare elements of a *Monell* claim and that, as a result, their claim is not plausible and should be dismissed.

Finally, the Defendants claim that the Andisons' state law claims for false imprisonment, assault, and battery are time-barred, because they were not added to this (consolidated) case until more than two years after the incident. The plaintiffs concede that these claims are time-barred, and the Motion for Judgment on the Pleadings dismissing these claims is **GRANTED**. These state law claims are **DISMISSED**.

## I. DISCUSSION

**A.  Judgment on the Pleadings Standard**

The standard applicable to a 12(c) motion for judgment on the pleadings mirrors that of a 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550. Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

1  raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2  (2007) (citations and footnotes omitted).  This requires a plaintiff to plead "more than an

3  unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing

4  *Twombly*).

5        On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

6  amend the pleading was made, unless it determines that the pleading could not possibly be cured

7  by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

8  247 (9th Cir. 1990).  However, where the facts are not in dispute, and the sole issue is whether

9  there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v.*

10 *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

11 **B.  The Andisons' claims against Cook and Lucas are fatally flawed.**

12       The Andisons assert both "official capacity" claims against Cook and Lucas—based on

13 their failure to train their officers and their ratification of their actions—and "individual

14 capacity" claims against them, based on their roles as supervisors. They argue that these claims

15 are plausible.

16       Cook and Lewis argue that the official capacity claims are redundant in light of the

17 (potential for) *Monell* claims against their respective employing municipalities:

18 > [W]hen both an officer and the local government entity are named in a lawsuit and
> the officer is named in official capacity only, the officer is a redundant defendant and
19 > may be dismissed." *Luke v. Abbott,* 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing
> *Vance v. County of Santa Clara,* 928 F. Supp. 993, 996 (N.D.Cal.1996)).

20 [Dkt. #25 at 7].  They argue that since *Monell* made it possible to sue the municipality directly

21 (even though it is not a "person"), there is no longer a reason to sue an official in his official

22 capacity.  The Andisons do not address this argument, and, as the Defendants point out, the

23

24

authority they do cite recognizes that these claims are really just claims against the municipalities.

Under *Luke*, the Andisons' official capacity claims against Cook and Lucas are redundant and their Motion for Judgment on the Pleadings on them is **GRANTED**.

Cook and Lucas also seek dismissal of the Andisons' "individual capacity" claim against them. As articulated by the Andisons, this is a claim that the Chief and the Sheriff are liable as supervisors for the inadequate training, supervision, or control of their subordinates. [Dkt. # 24 at 18, *citing Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).]

Cook and Lucas emphasize that the Andisons have failed to place either of them at the scene, and have not pled or referenced any factual support for the allegation that anything either of them did or did not do amounts to deliberate indifference, or was the cause of any constitutional violation. They also argue that because the viability of a "supervisor liability" claim was an open question as of June 2011, they are entitled to qualified immunity.

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). The Supreme Court has endorsed a two-part test to resolve claims of qualified immunity: a court must decide (1) whether the facts that a plaintiff has alleged "make out a violation of a

constitutional right," and (2) whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).[1]

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

The Defendants claim that their potential liability as supervisors for constitutional violations committed by their subordinates was "not clearly established" at the time of the incident. But this is not support for their claim to qualified immunity.

The qualified immunity inquiry is whether a reasonable officer would know that his *conduct* was a *violation* of someone's rights—*not* whether he should know that he might be *liable* for violating someone's rights. The right at issue in this case is Andison's Fourth Amendment right to be free from the unreasonable use of force, and it was clearly established at

---

[1] In *Pearson*, the Supreme Court reversed its previous mandate from *Saucier* requiring district courts to decide each question in order.

the time of the incident. "Supervisor liability" is not a constitutional right; it is a theory of liability. Cook's and Lucas's claim of qualified immunity on this basis is rejected.

But while the Andisons have plausibly pled a constitutional violation generally, they have not pled any fact supporting the conclusion that any act or omission by Cook or Lucas proximately caused that violation. The Andisons' claims that Cook or Lucas "failed to train" "ratified" or were "the final[2] policy makers" of their respective employers are bases for *Monell* liability on the part of the City and County. The claim that it is not yet known what Cook or Lucas actually did do during the incident is undermined by the Defendants' un-rebutted claim that Plaintiffs long ago sought and received the public records that presumably answered this question.

Finally, it is clear that after *Iqbal*, even in this Circuit, supervisor "deliberate indifference" claims are viable only where the supervisor's "knowledge of and acquiescence in unconstitutional conduct by his subordinates" caused the violation. The Andisons have not pled that claim, or any facts supporting it. *See Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011)

Cook's and Lucas's Motion for Judgment on the Pleadings dismissing the Andisons' "individual" or "supervisor" liability claims against them is **GRANTED**. Cook and Lucas are **DISMISSED** as defendants.

**C. The Andisons' *Monell* claims against the City and County are plausible as pled.**

The City and County argue that Plaintiffs recite the elements of a *Monell* claim, but do not assert facts to support it. In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil

---

[2] Chief Cook demonstrates that, as a matter of law, he was not the City's final policy maker.

rights; or that the entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).  Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation.  *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997).  A municipality is not liable simply because it employs a tortfeasor.  *Monell*, 436 U.S. at 691.  A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *id.* (quoting *Board of County Com'rs*, 520 U.S. at 409).

The City argues that Plaintiffs have not asserted any specific facts to support their *Monell* claim.  Under Rule 12(c), Plaintiffs must only assert enough facts to raise a right to relief under §1983 above the speculative level.  *Twombly*, 550, U.S. at 555.  The Andisons' complaint does not outline every factual allegation, but it is more than bare bones, and it is plausible.  It outlines the City's and the County's involvement in the incident—two dozen officers responded, entered and occupied the property, despite the family's insistence that they leave—and outlines seven specific areas where the officers' training was not adequate, and that those failings amounted to a custom or policy of deliberate indifference, which was a moving force behind the claimed constitutional violations.

1 . The Andisons' *Monell* claims as alleged and supported in their Complaint and in their
2 Response to the Motion are sufficiently pled.  Even if they were not, the corrective is leave to
3 amend, not outright dismissal.  The City's and County's Motion for Judgment on the Pleadings
4 as to the Andisons' *Monell* claims against them is **DENIED**.

5 IT IS SO ORDERED.

6 Dated this 8th day of May, 2015.

*[signature]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE